IN THE UNITED STATES DISTRICT COURT
FOR THE NORHTERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLLIAM KENNEDY,       )<br>                                     )<br>     Plaintiff,                  )<br>   v.                              )<br>                                     )<br>MASSACHUSSETTS MUTUAL LIFE )<br>INSURANCE CO., formerly known as )<br>Connecticut Mutual Life Insurance Co., )<br>                                     )<br>     Defendant.              ) | Case No. 06 C 1341 |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

William Kennedy has sued Massachusetts Mutual Life Insurance Company ("MassMutual") to recover benefits he claims are due under a disability insurance policy. MassMutual has moved for summary judgment. For the reasons set forth below, the Court denies MassMutual's motion.

### Facts

Kennedy purchased a disability insurance policy from MassMutual on October 3, 2000. In the policy, MassMutual agreed to provide disability benefits if Kennedy became partially or totally disabled while the policy was in force. The policy states that "[t]he Insured is Totally Disabled if he/she cannot perform the main duties of his/her Occupation due to Sickness or Injury. The Insured must be under a Doctor's Care." "Occupation" is defined as "[t]he Insured's regular profession(s) or business(es) at the start of Disability." "Doctor's Care" means that "[t]he Insured is receiving care by a Doctor for a condition causing the Insured's Disability." Def. Ex. E, Ex. 2 (policy) at

MM0043-44.

At the time Kennedy purchased the insurance policy, he was employed as a pit trader with ING. Pit traders stand on a trading floor all day, move about a lot, and do not get to sit down. In June or July 2002, ING closed its Chicago office. Kennedy remained on the ING payroll until December 31, 2002, although ING no longer had pit traders on the floor after June or July 2002.

In July 2002, Kennedy started computer trading for his own account through Cassandra Group. Kennedy traded from either his home or the office of Cassandra Group. Both parties agree that Kennedy was never an employee of Cassandra Group.

Kennedy had problems with his hip that started to affect his walking in late 2001 and got progressively worse. By December 2002, Kennedy realized that due to the condition of his hip, he would no longer be able to work as a pit trader. His regular doctor, Dr. Lovinger, stated in a December 8, 2003 letter that the onset of Kennedy's disability was November 2, 2002. Kennedy saw an orthopedic surgeon, Dr. Gitelis, in May, 2003 and again in April, 2005, at which point he underwent hip replacement surgery. Kennedy first applied for benefits under the insurance policy in October 2003. In his application, he claimed his disability had begun on January 1, 2003.

MassMutual paid Kennedy benefits for the period from February 4, 2004 to June 30, 2005 but stated that it did so as "a service" to Kennedy while it investigated his claim. MassMutual subsequently denied Kennedy's claim of disability and stopped payment of benefits. Kennedy claims that MassMutual breached the terms of the policy.

**Discussion**

Summary judgment is appropriate only if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). In considering a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws reasonable inferences in that party's favor. *Nelson v. Stewart*, 422 F.3d 463, 466 (7th Cir. 2005).

**1.      Waiver**

Kennedy contends that MassMutual waived its right to deny payment of disability benefits by paying him benefits from February 2004 until June 2005. Waiver is the "voluntary and intentional relinquishment of a known and existing right. It arises from an affirmative action and not by operation of law. Waiver may be either express or implied, arising from acts, words, conduct, or knowledge of the insurer." *Essex Ins. Co. v. Stage 2, Inc.*, 14 F. 3d 1178, 1181 (7th Cir. 1994). "The party claiming waiver has the burden of proving that the insurer's words or conduct were inconsistent with an intent to rely on the provisions of the policy. The evidence must be clear, precise, and unequivocal." *Loyola Univ. v. Humana Ins. Co.*, 996 F.2d 895, 901 (7th Cir. 1993).

As MassMutual argues, the cases Kennedy cites in support of his waiver argument involve an insurance company seeking to recover money it had mistakenly paid to the insured. In this case, MassMutual does not seek to recover the money it paid to Kennedy. Thus, the cases Kennedy cites do not govern the issue involved in this case.

In any event, Kennedy has not provided "clear, precise, and unequivocal" evidence that MassMutual intended to waive its defenses. To the contrary, a letter dated July 5, 2005 from MassMutual to Kennedy states, "Although MassMutual reserves all of its rights under the contract, this payment is being made in order to be of service to you.

Our review of your claim is continuing and the payment of this benefit does not constitute a waiver on MassMutual's part of our right to invoke, at any time, any provision contained in your policy." Kennedy has offered no evidence to support his waiver argument other than MassMutual's earlier payment of benefits, which does not support a finding of waiver. The Court concludes that Kennedy has failed to show the existence of a genuine issue of material fact on the issue of waiver.

**2.     Occupation**

As noted earlier, the terms of the insurance policy required MassMutual to pay Kennedy disability benefits if he could not perform the main duties of his occupation due to sickness or injury. MassMutual contends that because Kennedy was no longer working as a pit trader at the time he claimed his disability started, pit trading was no longer his occupation at the time. MassMutual argues that at the time Kennedy's disability began, he was a computer trader, not a pit trader, and that because he was able to perform the duties of a computer trader, he was not disabled. Kennedy argues that his occupation remained that of a pit trader but that he did not seek another position in that field because his disability prevented him from being able to do the work.

As noted earlier, the insurance policy defines "occupation" as "[t]he Insured's regular profession(s) or business(es) at the start of Disability." *See also, Winter v. Minnesota Mutual*, 199 F.3d 399, 409 (7th Cir. 1999); *Matten v. SMA Life Insurance, Co.*, No. 01 C 7755, 2002 WL 31433405, at *3-4 (N.D. Ill. Nov. 1, 2002). Had Kennedy become disabled while working for ING, there likely would be no question what his occupation was. In his application for benefits, however, Kennedy stated in his application for benefits that the onset of his disability was after ING closed its Chicago

4

operation. At that time, Kennedy was no longer working as a pit trader.

MassMutual's argument confuses two distinct concepts: a person's occupation, and the job he happens to be holding at a particular point in time. Consider a surgeon who injures his hand and cannot perform surgery for an extended period of time. To make ends meet while he waits for his hand to heal, he takes a job at a local Starbuck's. Does this change his occupation to that of a "barista"? Of course not; he is still a surgeon by occupation. As the Court noted in *Winter*, "If a party is merely on a leave of absence from his regular occupation, and working in a side occupation when he is injured, his regular occupation, not the side occupation, is the relevant occupation for the purpose of benefits." *Winter*, 199 F.3d at 411. At a minimum, there is a genuine issue of fact regarding whether Kennedy changed his occupation from pit trader to computer trader. Summary judgment is therefore inappropriate on this basis.

### 3.   **Under a Doctor's Care**

The insurance policy says that the insured is totally disabled when "he/she cannot perform the main duties of his/her Occupation due to Sickness or Injury. The Insured must be under a Doctor's Care." As noted earlier, the policy says that "doctor's care" means that "[t]he Insured is receiving care, by a Doctor, for a condition causing the Insured's Disability." MassMutual argues that Kennedy was not disabled until he was under the care of a doctor and that this did not occur until May 2003, when Kennedy first saw orthopedic surgeon Dr. Gitelis. Thus, MassMutual contends, Kennedy was not disabled on the date of disability onset that he claimed in his application for benefits, namely, January 1, 2003. Kennedy contends that the definition does not set a required time frame for being under a doctor's care and that, because the phrase is ambiguous, it

5

should be construed against MassMutual.

One problem with MassMutual's argument is that it assumes that Kennedy is forever stuck with the disability onset date he stated in his application for benefits – January 1, 2003. The Court does not see why Kennedy, even if not "disabled" within the policy's definition on that date, was not disabled as of May 2003 when he began seeing Dr. Gitelis – a date that was, after all, some five months before Kennedy applied for benefits. Thus even under MassMutual's proposed construction of the policy, Kennedy still may be entitled to benefits as of May 2003.

Alternatively, a fact finder reasonably could determine that Kennedy was under a doctor's care for his disability as of the disability onset date that he claimed in his application for benefits. Dr. Lovinger, an internist, testified during his deposition that in July 2002, he treated Kennedy for what Kennedy characterized as a "groin pull" and that this could have come from hip problems. Lovinger Dep. at 8-9. Dr. Lovinger prescribed medication and exercises. Although Kennedy did not see Dr. Lovinger again for this or any related problem before he applied for disability benefits, that by itself does not establish that he was not under a doctor's care. Because Dr. Lovinger gave Kennedy orders for follow-up care, a fact finder reasonably could determine that he was under a doctor's care for the condition in question as of the claimed disability onset date of January 1, 2003. In short, MassMutual would not be entitled to summary judgment even were the Court to adopt its proposed construction of the "doctor's care" requirement.

All of this aside, the Court concludes that the "doctor's care" provision is ambiguous with regard to *when* the insured must be under a doctor's care to be disabled. A term in an insurance policy is ambiguous "if it is subject to more than one reasonable

interpretation . . . ." *Winter v. Minnesota Mut. Life Ins. Co.*, 199 F. 3d 299 (7th Cir. 1999).

The policy says that to be disabled, the insured "must be under a doctor's care," defined to mean that he "is receiving care, by a doctor, for a condition causing [his] disability." The policy does not state, however, at what point in time the insured must be receiving care. At least two possibilities reasonably suggest themselves: at the time the disability is claimed to have begun (MassMutual's position), or at the time the insured applies for disability benefits. If the latter interpretation were to govern, Kennedy would meet the "doctor's care" requirement, as he was already being treated by Dr. Gitelis when he applied for benefits in October 2003. On the present record, the latter interpretation is no less reasonable than the first.

When a term in an insurance policy is ambiguous, it is construed in favor of the insured. *Heller v. Equitable Life Assurance Soc.*, 833 F.2d 1253, 1256 (7th Cir. 1987). There may be other interpretations of the "doctor's care" provision that are equally reasonable as those discussed above, but for present purposes, the existence of two reasonable interpretations of the provision, one of which would favor Kennedy, is sufficient to require denial of MassMutual's request for summary judgment on this basis.

## Conclusion

For the reasons explained above, the Court denies defendant's motion for summary judgment [docket no. 47]. The case is set for a status hearing on November 19, 2007 at 9:30 a.m. for the purpose of setting a trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 9, 2007

7